**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

VLSI Technology LLC,

           *Appellant*,

    v.

Patent Quality Assurance LLC,

           *Cross-Appellant*,

Intel Corporation,

           *Appellee*,

Katherine K. Vidal, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,

           *Intervenor*.

Nos. 23-2298, 23-2354

**APPELLANT VLSI TECHNOLOGY LLC'S
MOTION TO STAY APPEALS AND FOR A LIMITED REMAND
TO ALLOW CONCLUSION OF ADMINISTRATIVE PROCEEDINGS**

Appellant/cross-appellee VLSI Technology LLC moves to stay these consolidated appeals pending resolution of ongoing sanctions proceedings in the underlying inter partes review.  To avoid any question regarding the PTO's authority to resolve outstanding sanctions issues, VLSI also requests that the Court order a limited remand to the PTO while retaining jurisdiction over the appeals.

VLSI has discussed this motion with counsel for appellee/cross-appellant Patent Quality Assurance LLC ("PQA"), appellee Intel Corporation, and intervenor Katherine Vidal, the Director of the Patent and Trademark Office (the "Director").[1] No party opposes a stay or limited remand.  The Director agrees the Court should order a limited remand so that she may complete the ongoing sanctions proceedings, and does not oppose a stay.

Intel and PQA likewise do not oppose a stay and limited remand.  Nonetheless, they have asked VLSI to include the following statements setting forth their positions in greater detail.

Intel:

Intel consents to the requested relief for a stay and a limited remand so that the Director may resolve any remaining sanctions issues, which we understand the Director will attempt to resolve expeditiously and as quickly as possible.  *See VLSI Tech. LLC v. OpenSky Industries, LLC*, No. 23-2158, ECF No. 24 at 2, 6 (Fed. Cir.).  Intel does not plan to file a response.

PQA:

PQA opposes VLSI's request for a remand of indefinite scope and duration.  VLSI's proposal leaves the parties and the Court uncertain of whether issuance of an order resolving the pending show-cause issue will end the limited remand.  In view of the Director's representation to the parties that an order will be issued as soon as possible, PQA proposes a limited remand "allowing the Director to issue an order

---

[1] The Court granted the Director's motion to intervene today, November 7.  ECF #22.

2

resolving any remaining sanctions issues in the underlying IPR." PQA will not file an opposition brief.

In light of the foregoing, VLSI requests a stay and a limited remand to allow the Director to issue an order resolving any remaining sanctions issues in the underlying IPR. VLSI further proposes that, once the Director issues such an order, the parties should inform this Court within 30 days as to how they believe these appeals should then proceed. As discussed below (at p. 22), that approach is consistent with the Court's past practice when ordering a limited remand to the PTO.

VLSI also requests that the Court stay the briefing schedule pending consideration of this motion. The Court did so *sua sponte* in a related case where VLSI sought a stay and limited remand for resolution of ongoing PTO sanctions proceedings. *See VLSI Technology LLC v. OpenSky Industries, LLC*, Nos. 23-2158 *et al.*, Dkt. 23 (Fed. Cir. Sept. 21, 2023).

## INTRODUCTION AND SUMMARY

PQA was created shortly after a jury found that Intel infringed VLSI's patents. Almost immediately, PQA filed an IPR petition challenging one of those patents. The Director found that PQA's petition made numerous misrepresentations, and that PQA then proceeded to flout numerous discovery orders. Among other things, PQA refused to disclose its members or provide adequate responses regarding why it was formed and why it petitioned for IPR. The Director found PQA's misconduct

sanctionable.  Paper 102 at 4; Paper 131 at 2.[2]  But the Director denied VLSI's request that the IPR be dismissed.  Instead, the Director ordered briefing on whether PQA should be admonished and/or ordered to pay some or all of VLSI's expenses as a sanction.  Paper 131 at 51-52.  Those briefs have been filed, but the Director has not decided what sanction, if any, to impose.

In the meantime, the Patent Trial and Appeal Board issued its final written decision in the IPR.  Paper 129.  VLSI timely appealed that decision.  Paper 132; ECF #1; No. 23-2298.  PQA filed a putative notice of cross-appeal.  Paper 135; No. 23-2354.  As a result, one part of the IPR proceedings, the final written decision, has been presented to this Court as part of these consolidated appeals.  But the critical issue of sanctions—including the Director's refusal to terminate this IPR—remains before the PTO.

To promote judicial economy and conserve party resources, VLSI respectfully moves to stay these appeals pending the agency's final resolution of the sanctions issues so that all appeals arising from the IPR can be considered together.  Moreover, once the Director's decision on sanctions becomes final and appealable, VLSI intends to seek judicial review of that decision and, along with it, the Director's refusal to terminate the IPR.  The forthcoming sanctions appeal thus could render it

---

[2] Unless otherwise noted, "Paper" and "Ex." citations refer to filings in the underlying IPR proceeding (IPR2021-01229), while "ECF #" citations refer to filings on the docket of the lead appeal (Fed. Cir. No. 23-2298).

unnecessary for the Court to review the final written decision on the merits. The issues in the forthcoming sanctions appeal are also likely to overlap with issues in the current appeals. Allowing a single panel to familiarize itself with the issues and consider them together will be far more efficient than having multiple appeals arising from the same IPR present issues piecemeal on different tracks. Finally, to ensure the PTO can resolve the outstanding sanctions issues, the Court should grant a limited remand while retaining jurisdiction over these appeals. Indeed, all parties agree in principle that a stay and limited remand are warranted.

## BACKGROUND

### I.     PQA's Abuse of the IPR Process

#### A.     PQA Is Created in Response to a Verdict Finding that Intel Infringed VLSI's Patents

In March 2021, a jury found that Intel infringed two of VLSI's patents—including U.S. Patent No. 7,523,373 (the '373 patent), the subject of this IPR—and awarded VLSI damages. Paper 35 at 3. Three months later, in June 2021, PQA formed as a South Dakota limited liability company. Ex. 2009.

In July 2021, less than a month after its formation, PQA filed an IPR petition challenging the '373 patent. Paper 1. That petition was almost entirely a copy of a petition that Intel filed in 2019, which the PTAB had declined to institute. Paper 131 at 6; Ex. 2016 (comparing PQA and Intel petitions); *see Intel Corp. v. VLSI*

*Tech. LLC*, IPR2020-00158, Paper 3 (Nov. 20, 2019); *id.*, Paper 16 (May 20, 2020) (denying institution of Intel's petition).

Apart from challenging VLSI's patents, PQA has no business activities. Paper 67 at 8-9; Paper 131 at 29-30. It has steadfastly refused to disclose who is behind it, stonewalling every effort to discover that information. *See* pp. 8-9, *infra*.

### B.    PQA Lies to the Patent Office To Further Its Scheme

It turns out that another entity—OpenSky Industries—beat PQA to the Patent Office to challenge the '373 patent. Shortly after the jury's infringement verdict, and about a month before PQA filed its petition, OpenSky filed an IPR petition that (like PQA's) "copied extensively" from Intel's non-instituted 2019 petition. Paper 131 at 5. In support of its petition, OpenSky refiled an expert declaration that Intel had submitted in support of its 2019 IPR petition—but "without [the expert's] knowledge and without engaging him as a witness for the OpenSky proceeding." *Id.*[3]

PQA likewise submitted the expert declaration from the Intel petition (with "minor changes"). Paper 131 at 6. Unlike OpenSky, PQA had contacted and retained Intel's expert. *Id.* PQA argued that its petition, and not OpenSky's earlier-

---

[3] OpenSky filed its IPR petition as part of a scheme to extort VLSI, as the Director found in an IPR where OpenSky challenged the other patent underlying VLSI's infringement lawsuit. That IPR is the subject of appeal Nos. 23-2158 and 23-2159.

filed petition, should be instituted because it had "*exclusively* engaged" the expert and therefore OpenSky could not present him for cross-examination. Paper 1 at 4.

PQA's representation that it exclusively engaged Intel's expert turned out to be false. Paper 102 at 44-45; Paper 131 at 45-50. As the Director later found, its purportedly "exclusive" arrangement could be "'waived on request.'" Paper 131 at 44-45. In the meantime, however, PQA's misrepresentation achieved its intended purpose: denial of OpenSky's earlier-filed petition. Paper 102 at 52-53; Paper 131 at 44-45, 47-48. As the Director found, "the Board expressly relied on PQA's statements regarding exclusivity and denied OpenSky's petition on that basis." Paper 131 at 44.

PQA also misrepresented its purpose in filing the IPR. PQA asserted that its purpose was "'ensur[ing] patent quality.'" Paper 131 at 30; *see id.* at 20. That too was false, as the Director found in a December 22, 2022 order. Paper 102 at 48-49. Had that truly been PQA's purpose, PQA would have been "motivated . . . to make [the expert] available to any other party challenging the '373 patent," rather than attempt to derail OpenSky's petition. *Id.* at 49.[4]

The Director found that PQA's stonewalling in discovery made it impossible for the Director or "VLSI . . . to verify" PQA's true motives. Paper 131 at 29-30,

---

[4] On reconsideration of her December 22, 2022 order, the Director did not reach the issue of PQA's reason for filing its petition. Paper 131 at 37 n.25, 43 n.29. She did not, however, question that PQA's reasons had been improper.

37-38; *see* Paper 102 at 48-49. PQA repeatedly refused to disclose its members or to produce discovery regarding "the purpose for which [it] was formed." Paper 131 at 29-30. Thus, PQA could have improperly filed its petition as a strawman for Intel. *See* Paper 68 at 9 (VLSI arguing that it lacks "direct insight into who is behind PQA and whether additional individuals or entities should be identified as real parties-in-interest"). Or, as the Director once found, it could be that "PQA filed the Petition . . . for the improper purpose of extracting money from VLSI after VLSI's success before the jury." Paper 102 at 49.[5]

## II. Procedural History

### A. The Director Finds PQA Abused the IPR Process, But Refuses To Impose Meaningful Sanctions

The PTAB instituted review of PQA's petition on January 26, 2022. Paper 10. Although Intel had filed its own unsuccessful IPR petition challenging the same patent in 2019, and was time-barred under 35 U.S.C. § 315(b) from filing an IPR itself, Intel was granted joinder on June 6, 2022. Paper 30.

1. The Director *sua sponte* initiated a review of the Board's institution decision. Paper 31. The Director ultimately found "no error in the Board's decision to institute review." Paper 35 at 6-7. But she ordered further inquiry to determine

---

[5] As noted above (p. 7 n.4), the Director's decision on reconsideration did not reach the issue of PQA's reason for filing its IPR.

whether PQA had committed an "abuse of process" and, if so, what sanction or remedy should issue as a result. *Id.* at 7-13.

The Director ordered PQA to respond to interrogatories and produce documents. Paper 102 at 25-35; Paper 131 at 26-40. But PQA refused to comply:

- When the Director ordered PQA to disclose "who are its members," PQA "refuse[d]." Paper 131 at 29.

- When the Director ordered PQA to "answer [an] interrogatory seeking the purpose for which PQA was formed," it refused to answer or provide any relevant evidence. Paper 131 at 29-30.

- When the Director posed an interrogatory seeking "'the basis for concluding that there are no other real parties in interest,'" PQA's answer was "not responsive." Paper 131 at 37-38.

- When VLSI deposed the witness PQA identified as being able to verify its assertion that there are no other real parties in interest, the witness refused to answer any questions about PQA's members. Paper 68 at 4; Paper 67 at 15-16.

- When the Director ordered PQA to "produce or log [in a privilege log] any internal communications," PQA refused. Paper 131 at 28-29.

- PQA failed to "provide sufficient evidence to allow [the Director] to evaluate" its assertion that it was the sole party in interest. Paper 131 at 37-38.

- PQA defied an express order to provide "'all documents relating to PQA's business plan including its funding, its potential revenue, and the future allocation of any of its profits.'" Paper 131 at 37-38.

2.    On December 22, 2022, the Director issued an order finding that PQA engaged in misconduct. In that order, the Director found that PQA filed the petition

for "the improper purpose of extracting money from VLSI." Paper 102 at 49. The Director also found that PQA was "misleading" and made "misrepresentations of fact" when it asserted that it had exclusively engaged Intel's former expert and when it stated that its motivation for filing the petition was ensuring the integrity of the patent system. Paper 102 at 3, 48-49, 51-55. And the Director found that PQA engaged in discovery misconduct by failing to produce documents or respond to interrogatories in good faith. *Id.* at 2-3, 19-35.

The Director explained that "[e]ach aspect of PQA's conduct . . . taken alone, constitute[d] sanctionable conduct" under 37 C.F.R. § 42.12(a)(1)-(3), (6). Paper 102 at 4. "Taken together," the Director concluded, "[PQA's] behavior warrants sanctions," which were "necessary" for deterrence. *Id.*

3.    The Director then considered what sanctions to impose for PQA's abuses under 35 U.S.C. § 316(a)(6) and 37 C.F.R. § 42.12(a). Paper 102 at 55-59. VLSI had sought "the strictest sanction"—"termination" of the IPR. Paper 68 at 22-23; *see* Paper 102 at 56. The Director declined to impose that sanction. In the Director's view, termination was not warranted if "the unpatentability merits were compelling as of the time of institution and on the record as it existed at that time." Paper 102 at 58-59. The Director declared that PQA's petition presented sufficiently "compelling merits" that terminating sanctions were not warranted. *Id.* at 59-63.

Instead of terminating the IPR as VLSI requested, the Director merely dismissed *PQA* from the proceeding, "subject to the Director, Board, and USPTO retaining jurisdiction over the issuance of sanctions." Paper 102 at 58. The Director decided, however, that PQA's *IPR proceeding* would proceed without PQA, and declared Intel (which was time-barred from petitioning) "the sole Petitioner." *Id.*

In addition, the Director ordered PQA to show cause as to why it should not pay compensatory expenses as a sanction. Paper 102 at 63-64.

4.    PQA sought reconsideration of the Director's sanctions findings and show-cause order. Paper 105. The Director authorized PQA to submit further briefing. Paper 106 at 3-4.

PQA then filed a petition for a writ of mandamus in this Court, contending that the Director lacked authority to sanction it. *In re Patent Quality Assurance LLC*, No. 23-118, Dkt. 2 (Fed. Cir. Jan. 24, 2023). Before the PTO, PQA took the position that, because it had been dismissed from the IPR proceeding, the Director lost authority to impose sanctions against it. Paper 107 at 1.

In response to PQA's assertion that it could no longer be sanctioned, the Director vacated her order dismissing PQA from the IPR, restoring it as a party. Paper 108 at 4. The Director invited PQA to file the (previously authorized) additional briefing regarding sanctions issues. *Id.*; Paper 106 at 3-4. PQA then dismissed its mandamus petition. No. 23-118, Dkt. 28 (Mar. 6, 2023).

After PQA filed its additional brief, Paper 121, the Director issued an order in which she "consider[ed] . . . anew" whether PQA engaged in sanctionable conduct. Paper 131 at 2. She concluded it had. *Id.* The Director again found that PQA engaged in discovery misconduct. *Id.* at 26-43. And she reaffirmed her findings that PQA misrepresented its engagement of Intel's former expert. *Id.* at 43-50.

The Director ordered PQA and VLSI to submit briefs addressing whether PQA should be "reprimanded or admonished" and/or "ordered to pay compensatory expenses" as a sanction for its misconduct. Paper 131 at 51-52. Proceedings regarding those potential sanctions—including the amount of any monetary sanction—are ongoing. *See* Papers 138-141.

## B. VLSI and PQA Appeal from the Board's Final Written Decision, While Sanctions Remain Unresolved

On June 13, 2023, the Board issued a final written decision finding all challenged claims unpatentable. Paper 129. VLSI timely appealed that decision on August 14, 2023. Paper 132; ECF #1-2. VLSI seeks review of, among other things, the Board's unpatentability findings; the Board's grant of Intel's joinder request; the Board's refusal to terminate Intel based on claim preclusion; and the Director's unilateral involvement in the first instance rather than only on rehearing. Paper 132 at 1-2. VLSI further noted that it intends to seek review of any adverse sanctions rulings, including the failure to terminate the IPR. *Id.* at 2. But VLSI noted that

those rulings were not yet appealable because sanctions proceedings are not completed. *Id.*

PQA filed a putative notice of cross-appeal on August 28, 2023. Paper 135; No. 23-2354, Dkt. 1-2. Although styled as a notice of appeal from the final written decision, it seeks review *not* of that decision, but of the Director's sanctions orders. Paper 135 at 1. As discussed below, however, sanctions proceedings remain pending before the PTO. *See* pp. 15-16, *infra*.

This Court consolidated PQA's appeal with VLSI's appeal. ECF #16.

## ARGUMENT

This Court has inherent power to stay appeals, including to issue stays pending resolution of related proceedings in the PTO. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Stays are particularly warranted where they further judicial economy. *Landis*, 299 U.S. at 254.

Here, the interest in judicial economy compellingly counsels in favor of staying these appeals until sanctions proceedings arising out of the same IPR are complete. Such a stay will allow all appeals from a single underlying IPR to proceed together before the same panel. In the sanctions proceedings, moreover, the Director refused to terminate this IPR as a sanction for PQA's abuse of the IPR system. Paper 102 at 58-63; *see* Paper 131 at 51-52. If the Director's denial of terminating

sanctions is reversed on appeal and the IPR is dismissed—or if the Court vacates and requires the Director to reconsider dismissal—that could obviate the need for this Court to reach the merits of VLSI's appeal from the Board's final written decision.   But the sanctions issues remain pending before the Director.   The sanctions issues, including the refusal to terminate, will not be ripe for appeal until the Director resolves whether PQA should be admonished and/or ordered to pay compensatory expenses (and, if so, the amount of any monetary sanctions).   At the very least, the sanctions decisions and the final written decision present overlapping issues that are logically considered together.

Recognizing the efficiency benefits of considering all appeals from a single IPR together, this Court has previously stayed appeals from an IPR final written decision where, as here, sanctions proceedings in the IPR are ongoing and an appeal on sanctions issues could moot the appeals from the final written decision.  *Apple Inc. v. Voip-Pal.com, Inc.*, No. 18-1456, Dkt. 21 (Fed. Cir. Feb. 21, 2018) (granting stay); No. 18-1456, Dkt. 6 at 1 (stay motion); *Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*, Nos. 23-2111 *et al.*, Dkt. 16 (Fed. Cir. Oct. 19, 2023); *Spectrum Sols. LLC v. Longhorn Vaccines & Diagnostics, LLC*, IPR2021-00847 *et al.*, Paper 133 at 2-7 (PTAB Oct. 27, 2023).  The same approach is warranted here. No party to these appeals disputes that a stay is appropriate.

I.    **A Stay Is Warranted So the Director's Sanctions Decisions Can Be Considered Together with the Merits**

A.    **The Director's Sanctions Decisions Are Not Before This Court**

The Court ordinarily has jurisdiction to review *final* PTO sanctions orders issued in inter partes reviews.  *See, e.g., Apple Inc. v. Voip-Pal.com, Inc.*, 976 F.3d 1316, 1322-23 (Fed. Cir. 2020).  But the Court lacks jurisdiction over an "unquantified, and thus non-final," sanctions order.  *Bennett Regulator Guards, Inc. v. Atlanta Gas Light Co.*, 905 F.3d 1311, 1315 (Fed. Cir. 2018) (reviewing final written decision but finding no jurisdiction over appeal of non-final sanctions decision), *vacated on other grounds*, 140 S. Ct. 2711 (2020), *on remand*, 825 F. App'x 773 (Fed. Cir. 2020) (same); *cf. Orenshteyn v. Citrix Sys., Inc.*, 691 F.3d 1356, 1358 (Fed. Cir. 2012) (Court lacks jurisdiction over district-court orders granting sanctions "until the district court has decided the amount of sanctions").

Here, sanctions are not merely unquantified; the Director has not even determined whether to order compensatory expenses as a sanction.  Paper 131 at 51-52; Papers 138-141.  As a result, the Director's sanctions decisions—including her decision refusing to terminate the IPR as a sanction—are not yet appealable.

This Court's decision in *Bennett* makes that clear.  There, the patent owner appealed from a final written decision in which the Board found all challenged claims unpatentable.  905 F.3d at 1313.  The patent owner also attempted to appeal from a sanctions order that had declined to terminate the IPR in favor of monetary

sanctions, where the amount remained unresolved. *Id.* at 1315. This Court held that it lacked jurisdiction over the appeal of the sanctions order—including the refusal to terminate the IPR—because the Board "ha[d] not yet quantified its sanctions award." *Id.*; *accord Bennett*, 825 F. App'x at 782. The Court was unwilling "to arbitrarily divide the Board's sanctions order into two decisions—one relating to termination and one relating to a monetary award." *Bennett*, 905 F.3d at 1316; *accord Bennett*, 825 F. App'x at 783. The refusal to terminate the IPR as a sanction thus was not final and appealable until *all* sanctions issues, including quantification of monetary sanctions, were fully resolved. *See Bennett*, 905 F.3d at 1315; *accord Bennett*, 825 F. App'x at 782.

Likewise here, the Director declined to impose terminating sanctions and instead *may* order a lesser, as-yet-unquantified, monetary sanction. Paper 102 at 58-63; Paper 131 at 51-52. The sanctions issues in this case—including whether termination was warranted—are thus not yet appealable. If they are to be considered together with the other issues arising from this IPR, including the final written decision at issue here, the consolidated appeals must be stayed until the Director issues a final decision on sanctions.

**B.  A Stay Is Warranted Because an Appeal of the Sanctions Issues Could Moot VLSI's Appeal and at Least Presents Overlapping Issues**

Judicial economy strongly favors a stay because this Court's review of the sanctions orders could moot—and at least presents overlapping issues with—the final written decision at issue here.

1.  Once the sanctions proceedings are complete, VLSI intends to seek this Court's review and argue (among other things) that the IPR should have been terminated as a sanction for PQA's abuse of the IPR system; any lesser sanction the Director may impose on PQA (such as admonishment or paying certain expenses) is inadequate.  *See* 37 C.F.R. §42.11(d)(4).  The sanctions appeal thus could moot the rest of this case, eliminating the need for this Court to decide a host of issues arising from VLSI's appeal of the final written decision, including, but not limited to, the Board's obviousness and evidentiary rulings, the applicability of claim preclusion in IPRs, the propriety of Intel's joinder, the Director's authority to act unilaterally post-*Arthrex*, and due-process issues.  Judicial economy favors a stay so that all potentially dispositive issues arising from this IPR can be considered together.

This Court has granted stays in similar circumstances.  In *Apple Inc. v. Voip-Pal.com*, Apple sought a stay of appeals from a final written decision pending the Board's resolution of Apple's motion for sanctions—including termination of the IPR with judgment for Apple—against Voip-Pal.com.  No. 18-1456, Dkt. 21

(granting stay); No. 18-1456, Dkt. 6 (motion for stay).  Because case-dispositive sanctions were at issue, an appeal from a final sanctions order could have mooted the appeals from the final written decision.  This Court accordingly granted a stay pending resolution of the sanctions issues.  No. 18-1456, Dkt. 21 at 2.[6]  The Court lifted the stay once Apple appealed the sanctions issues to this Court; at that point, the sanctions and merits issues were decided together.  No. 18-1456, Dkt. 25 at 1-2, Ex. C (June 7, 2019) (motion to lift stay); No. 18-1456, Dkt. 26 (July 3, 2019) (order lifting stay); *Apple*, 976 F.3d at 1320-26.

More recently, in *Longhorn Vaccines & Diagnostics, LLC v. Spectrum Solutions LLC*, Nos. 23-2111 *et al.*, Dkt. 16 (Fed. Cir. Oct. 19, 2023), this Court deactivated IPR appeals and remanded for completion of the Director's review of sanctions issues.  *Id.* at 2; *Spectrum Sols. LLC v. Longhorn Vaccines & Diagnostics, LLC*, IPR2021-00847 *et al.*, Paper 133 at 2-7 (PTAB Oct. 27, 2023).  There, as here, sanctions issues were potentially case dispositive, presenting a possibility that the Court could resolve the appeals on sanctions grounds rather than patentability.  *See Spectrum Sols.*, IPR 2021-00847 *et al.*, Paper 133 at 3-4 (Board ordered judgment against patent owner as sanction in addition to finding claims unpatentable).

---

[6] After the Board resolved Apple's sanctions motion, this Court extended the stay, over Voip-Pal.com's objections, until resolution of Apple's rehearing request before the PTO.  No. 18-1456, Dkt. 24 (Jan. 17, 2019).

This Court's approach in *Apple* and *Longhorn Vaccines* marks the appropriate path here, as all parties before the Court agree. A stay pending resolution of the sanctions proceedings was warranted in those cases. It is warranted here as well.[7]

2.     VLSI's sanctions appeal, moreover, will present issues that are likely to overlap with, or closely relate to, issues in its current appeal. Federal courts have long "'disfavored piecemeal litigation.'" *BioDelivery Scis. Int'l, Inc. v. Aquestive Therapeutics, Inc.*, 898 F.3d 1205, 1210 (Fed. Cir. 2018); *see Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (recognizing "'historic federal policy against piecemeal appeals'"). This Court thus has recognized that, where different issues "in the same case" call for similar analysis, they generally "should be appealed together" "in the interests of judicial economy and avoidance of piecemeal litigation." *Smith v. Gober*, 236 F.3d 1370, 1372 (Fed. Cir. 2001).

---

[7] The potential consequences of not granting a stay underscore the strong judicial economy interests at stake. In *Bennett*, this Court decided an appeal from a final written decision before sanctions were resolved, as might happen here absent a stay. *See Bennett*, 905 F.3d at 1315-16; *Bennett*, 825 F. App'x at 783. The proceedings that ensued aptly illustrate the damage to judicial economy that can result. There, this Court twice reviewed a final written decision before related sanctions issues were resolved, *see Bennett*, 905 F.3d at 1314-16; *Bennett*, 825 F. App'x at 776-83, only for the Board to ultimately de-institute the entire IPR and vacate the final written decision when issuing its final sanctions ruling, *see Atlanta Gas Light Co. v. Bennett Regulator Guards, Inc.*, 33 F.4th 1348, 1351-52 (Fed. Cir. 2022). This Court should not be put through the burden of conducting substantive reviews of agency decisions, and issuing decisions, only to have them rendered meaningless by a sanctions ruling. And there is no countervailing consideration that would counsel proceeding piecemeal here. The certified lists were only recently filed and briefing has not begun.

The same considerations are implicated here.  When addressing termination of the IPR as a potential sanction, the Director considered whether PQA's petition "presents a compelling, meritorious challenge."  Paper 102 at 5, 58-63.  That issue overlaps with the primary issue the Board addressed in the final written decision— namely, whether VLSI's claims were shown to be obvious on the grounds identified in the petition.  Staying VLSI's appeal until the sanctions issues are ripe for appeal would ensure that only a single panel need familiarize itself with those related questions and can consider them together, promoting judicial efficiency.[8]

## II.    The Court Should Order a Limited Remand To Ensure the Agency Can Resolve Outstanding Sanctions Issues

When the Court granted a stay in *Apple v. Voip-Pal.com* pending resolution of outstanding sanctions issues, it also ordered a limited remand "[t]o the extent necessary" to ensure the Board retained authority "to consider Apple's sanctions motions," while this Court "retain[ed] jurisdiction over the appeals" from the final written decision.  No. 18-1456, Dkt. 21 at 2.  Similarly, in *Longhorn Vaccines*, the Court "remand[ed] to the extent necessary for the Director's review to proceed."

---

[8] The overlap is not complete: VLSI believes PQA's abuses warrant termination of the IPR whether or not PQA's petition (which was copied largely verbatim from a previously denied petition) supposedly presented compelling merits.  But insofar as the merits are relevant to sanctions, that issue overlaps with the merits issues in VLSI's appeal from the final written decision.

No. 23-2111, Dkt. 16 at 2. Here, all parties consent to a limited remand to allow the Director to issue an order resolving any remaining sanctions issues.

As the Court recognized in *Apple*, a limited remand may not be strictly necessary. Lower tribunals "typically retain jurisdiction to rule on collateral issues, such as sanctions or attorney's fees, even after they lose jurisdiction over the merits decision." *Dobyns v. United States*, 915 F.3d 733, 738 (Fed. Cir. 2019) (Court of Federal Claims context). Moreover, PQA's putative notice of appeal seeking review of the Director's sanctions rulings (Paper 135) is premature. *See Bennett*, 905 F.3d at 1315-16; *Bennett*, 825 F. App'x at 783; pp. 15-16, *supra*. As a result, it is a "nullity" that likely would not divest the PTO of jurisdiction even over sanctions. *United States v. Rodgers*, 101 F.3d 247, 252 (2d Cir. 1996); *see Venen v. Sweet*, 758 F.2d 117, 121 (3d Cir. 1985) ("'[T]he jurisdiction of the lower court to proceed in a cause is not lost by the taking of an appeal from an order or judgment which is not appealable.'").

Granting a stay and limited remand, however, avoids any need to decide the propriety, prematurity, or effect of PQA's current appeal. Accordingly, VLSI requests that, to the extent necessary, this Court grant a limited remand allowing the Director to issue an order resolving any remaining sanctions issues in the underlying IPR. As noted above, all parties agree a remand is warranted. *See* pp. 2-3, *supra*.

While not opposing remand, PQA states that it opposes a "remand of indefinite scope and duration." P. 2, *supra*. But VLSI does not seek such a remand. VLSI proposes that, within 30 days of the Director's issuance of an order resolving any remaining sanctions issues in the underlying IPR, the parties inform the Court how they believe the appeals should proceed. That is consistent with the Court's past practice when ordering a limited remand for the Director to issue a decision on outstanding issues. *See Longhorn Vaccines*, Nos. 23-2111, Dkt. 16 at 2 ("Within 30 days of the Director's completion of her review, the parties are directed to inform this court how they believe these appeals should then proceed.").

## CONCLUSION

The Court should stay these consolidated appeals and order a limited remand allowing the Director to issue an order resolving any remaining sanctions issues in the underlying IPR. Within 30 days after the Director issues such an order, the parties should inform this Court how they believe the appeals should proceed.

The Court should also stay the briefing schedule pending its resolution of this motion. The Court recently ordered such relief under similar circumstances in *VLSI Technology LLC*, No. 23-2158, Dkt. 23.

November 7, 2023                          Respectfully submitted,

                                          /s/ Jeffrey A. Lamken

Alan Heinrich                             Jeffrey A. Lamken
Dominik Slusarczyk                          *Counsel of Record*
IRELL & MANELLA LLP                       Lucas M. Walker
1800 Avenue of the Stars, Suite 900       Rayiner Hashem
Los Angeles, CA  90067                    MOLOLAMKEN LLP
(310) 277-1010 (telephone)                The Watergate, Suite 500
(310) 203-7199 (facsimile)                600 New Hampshire Avenue, N.W.
                                          Washington, D.C.  20037
Babak Redjaian                            (202) 556-2000 (telephone)
IRELL & MANELLA LLP                       (202) 556-2001 (facsimile)
840 Newport Center Drive, Suite 400       jlamken@mololamken.com
Newport Beach, CA  92660
(949) 760-0991 (telephone)                Jordan Rice
(949) 760-5200 (facsimile)                Thomas P. Schubert
                                          MOLOLAMKEN LLP
Nathan Nobu Lowenstein                    300 North LaSalle Street
Kenneth Weatherwax                        Chicago, IL  60654
LOWENSTEIN & WEATHERWAX LLP               (312) 450-6700 (telephone)
1016 Pico Boulevard                       (312) 450-6701 (facsimile)
Santa Monica, CA  90405
(310) 307-4500 (telephone)
(310) 307-4509 (facsimile)

*Counsel for Appellant VLSI Technology LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-2298, 2023-2354

**Short Case Caption:** VLSI Technology LLC v. Patent Quality Assurance LLC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑     the filing has been prepared using a proportionally-spaced typeface and includes  5,158  words.

☐     the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐     the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 11/07/2023

Signature: /s/ Jeffrey A. Lamken

Name: Jeffrey A. Lamken

Save for Filing

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 2023-2298, 2023-2354

**Short Case Caption** VLSI Technology LLC v. Patent Quality Assurance LLC

**Filing Party/Entity** VLSI Technology LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/07/2023

Signature: /s/ Jeffrey A. Lamken

Name: Jeffrey A. Lamken

**FORM 9. Certificate of Interest**

| 1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| VLSI Technology LLC | | CF VLSI Holding LLC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Bridget Smith<br>Lowenstein & Weatherwax LLP *No longer with firm | Flavio Rose<br>Lowenstein & Weatherwax LLP *No longer with firm | Edward Hsieh<br>Lowenstein & Weatherwax LLP *No longer with firm |
| Parham Hendifar<br>Lowenstein & Weatherwax LLP | Patrick Maloney<br>Lowenstein & Weatherwax LLP *No longer with firm | Jason C. Linger<br>Lowenstein & Weatherwax LLP *No longer with firm |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐    Yes (file separate notice; see below)    ☐    No    ☑    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |