Petition for IPR2021-01229
U.S. Patent No. 7,523,373

IN THE

**UNITED STATES PATENT AND TRADEMARK OFFICE**

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————————

PATENT QUALITY ASSURANCE, LLC, and
INTEL CORPORATION,
Petitioners

v.

VLSI Technology, LLC
Patent Owner

———————————

*Inter Partes* Review Case No. IPR2021-01229

Patent No. 7,523,373

———————————

**PETITIONER PATENT QUALITY ASSURANCE, LLC'S
AMENDED NOTICE OF CROSS-APPEAL**

———————————

**via CM/ECF**
United States Court of Appeals for the Federal Circuit

Petition for IPR2021-01229
U.S. Patent No. 7,523,373

Pursuant to 35 U.S.C. §§ 141(c), 142, and 319, 37 C.F.R. §§ 90.2(a) and 90.3(a), Rule 4(a) of the Federal Rules of Appellate Procedure, and 28 U.S.C. § 1295(a)(4)(A), Petitioner Patent Quality Assurance LLC ("PQA" or "Petitioner") hereby provides this amended notice of cross appeal. PQA intends to continue its cross-appeal (no. 2023-2354) at the court following the limited remand for the purpose of the Director concluding her Director Review process.

PQA continues to appeal from the Patent Trial and Appeal Board's ("Board's") Final Written Decision in IPR2021-01229, entered on June 13, 2023 (Paper No. 129) in the above-captioned *inter partes* review of United States Patent No. 7,523,373 ("the '373 patent"), including all underlying orders, decisions, rulings, and opinions that are adverse to Petitioner. In addition, PQA now gives notice that it wishes to appeal from the December 13, 2023 Order (Paper No. 143). This notice is timely filed within 63 days after the issuance of that Order. *See* Fed. R. App. P. 4(a)(3); Fed. Cir. R. 15(a)(1); 37 C.F.R. §§ 90.3(a)(1), 1.304, 2.145.

For the limited purpose of providing the Director with the information requested in 37 C.F.R. § 90.2(a)(3)(ii), Petitioner further indicates that the issues on cross-appeal may include, but are not limited to:

- The Director's findings in Papers 130 and 143 that PQA engaged in sanctionable conduct including (1) failing to comply with Mandated Discovery (e.g., Paper 130 at 40), (2) making misrepresentations of fact

1

Petition for IPR2021-01229
U.S. Patent No. 7,523,373

and/or misleading arguments regarding the nature of its exclusive engagement with its expert, and (3) any other findings in Papers 130 and 143 adverse to PQA's interests.

- Legal errors in Papers 31, 35, 36, 37, 39, 100, 101, 102, 103, 104, 106, 108, 109, 111, 112, 113, 117, 122, 124, 125, 130, 131, 143: denying due process, violating the Administrative Procedure Act 5 U.S.C. § 706(2)(A–E), acting beyond agency authority, failing to follow agency regulations, failing to act within a short and reasonable time period.

- Any other Board and/or Director finding, determination, judgment, or order on any issue decided adversely to PQA.

Simultaneously with this submission, a copy of this Amended Notice of Appeal is being served on the Director of the United States Patent and Trademark Office. Petitioner PQA believes no additional fee is required. *See* Fed. R. App. P. 4(a)(4)(B)(iii).

Petition for IPR2021-01229
U.S. Patent No. 7,523,373

December 22, 2023

*/s/ Truman H. Fenton*
Bruce W. Slayden II (Reg. No. 33,790)
Truman H. Fenton (Reg. 64,766)
Brian C. Banner (*pro hac vice*)

Slayden Grubert Beard PLLC
401 Congress Avenue, Suite 1650
Austin, Texas 78701
Attorneys for Petitioner, Patent Quality
Assurance LLC

3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2023, I caused a true and correct copy of PETITIONER PATENT QUALITY ASSURANCE, LLC'S AMENDED NOTICE OF CROSS-APPEAL to be served via electronic mail, by agreement between the parties, on the following attorneys of record for the Director of the USPTO, Patent Owner VLSI, and Joined Petitioner Intel:

Robert McManus (robert.mcmanus@uspto.gov)
Farheena Rasheed (farheena.rasheed@uspto.gov)
Peter Ayers (peter.ayers1@uspto.gov)
Babak Redjaian (bredjaian@irell.com)
Kenneth J. Weatherwax (weatherwax@lowensteinweatherwax.com)
VLSI_IPRs@lowensteinweatherwax.com
Ben Fernandez (ben.fernandez@wilmerhale.com)
David Cavanaugh (david.cavanaugh@wilmerhale.com)
Yvonn Lee (yvonne.lee@wilmerhale.com)
Steven Horn (steven.horn@wilmerhale.com)

Respectfully submitted,

*/s/ Truman H. Fenton*
Truman H. Fenton

# ATTACHMENT A

Director_PTABDecision_Review@uspto.gov          Paper No. 143
571-272-7822                          Date: December 13, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE OFFICE OF THE UNDER SECRETARY OF COMMERCE
FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE

_____

PATENT QUALITY ASSURANCE, LLC,
INTEL CORPORATION,
Petitioners,

v.

VLSI TECHNOLOGY LLC,
Patent Owner.

_____

IPR2021-01229[1]
Patent 7,523,373 B2

_____

Before KATHERINE K. VIDAL, *Under Secretary of Commerce for
Intellectual Property and Director of the United States Patent and
Trademark Office.*

ORDER
Issuing Sanctions
*37 C.F.R. §§ 42.5, 42.11, 42.12*

---

[1] Intel Corporation ("Intel"), which filed a petition in IPR2022-00479, was
joined as a party to this proceeding.  Paper 30.

IPR2021-01229
Patent 7,523,373 B2

On August 3, 2023, I issued a Decision finding that Petitioner Patent Quality Assurance, LLC ("PQA") had engaged in sanctionable conduct by failing to comply with mandated discovery and by making a misrepresentation of fact and/or misleading argument. Paper 131, 2, 43, 50–51 ("Decision").[2]  In that Decision, I ordered PQA to show cause why it should not be reprimanded or admonished, or ordered to pay compensatory expenses to Patent Owner VLSI Technology LLC ("VLSI"), including attorney fees, for the sanctionable conduct. *Id.* at 51–52.  In this Order, I determine the appropriate sanction is a strong admonishment to PQA for its conduct, and a warning not to repeat this conduct in the future.

## I.    SANCTIONABLE CONDUCT

The background of this case is set forth in more detail in the Decision. In shorter form, I granted Director Review of the Board's Institution Decision (Paper 10) and I mandated that the parties comply with certain discovery, including interrogatories and production of documents, to assist me in evaluating the issues on review. *See* Paper 35, 9–11; Paper 131, 20. Thereafter, I found that PQA failed to comply with the mandated discovery by (1) refusing to provide internal documents to the other parties in the proceeding, or instead, a privilege log listing allegedly privileged documents withheld for in camera review; and (2) failing to respond in good faith to the interrogatories, with adequate supporting evidence. *See* Paper 131, 26, 40, 42–43.  I held that the type of discovery misconduct exhibited by PQA would be sufficient to give rise to adverse inferences under 37 C.F.R.

---

[2] Paper 131 is the nonconfidential version of the Decision; Paper 130 is the confidential version.

IPR2021-01229
Patent 7,523,373 B2

§ 42.12(b)(1), but found that I did not need to apply adverse inferences in order to make findings on the record before me. *See* Paper 131, 42–43.

Additionally, I further found that PQA misrepresented a fact and/or made a misleading argument regarding its engagement of an expert, Dr. Singh. Paper 131, 50. I ordered further briefing on whether PQA should be admonished or ordered to pay compensatory expenses as sanctions for PQA's "misrepresentation of fact, misleading argument, or failure to comply with mandated discovery." *Id.* at 51–53. I granted an extension of the deadline for briefing. Ex. 3048. On August 21, 2023, PQA and VLSI filed opening briefs. Paper 133; Paper 134.[3] On August 28, 2023, PQA and VLSI filed responsive briefs. Paper 136; Paper 137.[4]

On August 14, 2023, VLSI filed an appeal to the U.S. Court of Appeals for the Federal Circuit. Paper 132. On December 7, 2023, the Federal Circuit remanded the case back to the U.S. Patent and Trademark Office ("USPTO" or "the Office") to resolve any remaining sanctions issues. *See* Ex. 3050.

### A.    PQA's Arguments Against Sanctions

PQA advances certain arguments as to why it should not be sanctioned at all for its inadequate discovery responses.

As an initial matter, I have already determined that PQA's conduct is sanctionable; PQA's arguments are thus non-responsive to the question whether compensatory expenses or admonishment is an appropriate

---

[3] The nonconfidential versions of these briefs are Papers 138 and 140. The confidential versions of these briefs are Papers 133 and Paper 134.

[4] The nonconfidential versions of these briefs are Papers 139 and 141. The confidential versions of these briefs are Papers 136 and 137.

IPR2021-01229
Patent 7,523,373 B2

sanction. *Cf.* Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2289 (3d ed. Dec. 2023 Update) ("The propriety of the discovery sought is not in issue at the time sanctions are being imposed under [Federal Rule Civil Procedure] Rule 37(b)."). Moreover, it bears reiterating that PQA's sanctionable conduct includes its misrepresentation of facts and/or misleading arguments relating to its "exclusive" retention of Dr. Singh as an expert, not only its inadequate discovery responses. Paper 131, 50; *see id.* at 43–50. Thus, even if PQA's third attempt to explain why its discovery-related conduct is not sanctionable were timely or had merit, those explanations would not excuse PQA's additional sanctionable conduct relating to Dr. Singh. Nonetheless, PQA's latest attempt to explain its discovery compliance failures lacks merit.

First, PQA now argues that it could not have been expected to log non-privileged arguments in a privilege log. Paper 138, 9 and n.5. If PQA's argument is that the documents it failed to produce were not privileged, it should have produced them after being ordered to do so. *See* 37 C.F.R. § 42.12(a)(1).

Relatedly, PQA argues that I did not rule on PQA's objections before the compliance deadline, apparently referring to Exhibit 3004 (an email, dated July 20, 2022) and Exhibit 1039 (Petitioner's Objections to Director's Orders, dated August 4, 2022), which contain a similar set of objections filed before submission of PQA's opening brief on Director Review.[5] Paper 138, 3; *see* Ex. 1039, 3–17; Ex. 3004. PQA suggests (without citation to legal support) that its failure to adequately comply with mandated discovery

---

[5] PQA later filed Paper 48, containing a similar set of objections, on the same day that it filed its opening brief on Director Review, i.e., August 18, 2022.

IPR2021-01229
Patent 7,523,373 B2

should be excused because I had not ruled on its objections before the discovery due date. PQA's argument fails for several reasons.

On July 29, 2022, I provided PQA with discovery clarification, in advance of the response deadline. *See* Paper 39. I noted PQA's objections and "confirm[ed] that a party's production of documents as required by the Scheduling Order will not constitute a waiver of that party's objections." Paper 39, 3. I reminded the parties that pending objections did not excuse them, however, from complying with the ordered discovery and that failure to comply could be sanctionable. Paper 39, 3–4.[6]

Further, as my July 29, 2022 Order made clear, PQA's discovery objections did not relieve it from a duty to adequately respond and non-compliance would be at PQA's risk. *See id.* ("[A] party's production of documents as required by the Scheduling Order will not constitute a waiver of that party's objections. The parties, however, are reminded that they are required to comply with the full scope of the Scheduling Order . . . . [F]ailure to comply with my Order may be sanctionable."). That is particularly true here, where PQA's objections were uniformly directed to arguments about the Director Review *process* itself, not to the discovery scope; those objections did not concern PQA's ability to respond. *See* Ex. 1039, 3–17. In other words, PQA's ability to respond to the mandated discovery did not turn on answers to its objections regarding my authority. *See, e.g.*, *Grooms & Co. Constr., Inc. v. United States*, 2015 WL 8481954, *7 n.7 (Fed. Cl. No. 13-426C) (Dec. 9, 2015) (ordering sanctions based on parties' failure to comply with discovery and explaining that claimed

---

[6] I also issued more than one order to show cause before issuing this admonishment, providing PQA additional opportunities for briefing. *See* Paper 101, 64–65; Paper 131, 52.

IPR2021-01229
Patent 7,523,373 B2

obstacles to compliance did not excuse conduct). *But cf. Ingalls Shipbuilding, Inc. v. United States*, 857 F.2d 1448, 1451–52 (Fed. Cir. 1988) (finding dismissal was not appropriate where a party was confused about the scope of its discovery obligations) ("In view of the government's apparent confusion about the scope of its additional discovery obligation, we see the sanction of dismissal as unduly severe."); *Marshall v. Segona*, 621 F.2d 763, 768 (5th Cir. 1980) ("[A] party's simple negligence, grounded in confusion or sincere misunderstanding of the Court's orders, [does not] warrant dismissal.").[7]

PQA challenged my authority to impose discovery and conduct review, and lodged privilege concerns. I made clear before the discovery deadline, which I extended upon request, that the parties were free to maintain a privilege log in lieu of production. Paper 37, 4; Paper 39, 4. More broadly, I made clear that the mandated discovery was designed to enable adequate and accurate resolution of the issues at hand. *See, e.g.*, Paper 35, 7–11. PQA cannot thwart my decision-making by refusing to comply with reasonable discovery requests on the basis that I lacked the power to conduct review or ask for discovery. *See, e.g.*, *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1284–85 (Fed. Cir. 2005) (parties must provide reasonably requested information to permit USPTO to accurately and efficiently administer patent laws). Thus, while I have already

---

[7] While these decisions involve dismissal as a sanction for inadequate discovery responses, I find their reasoning on the interplay between that sanction and the violating party's objections germane to PQA's argument, even though PQA's sanctionable conduct involves more than just discovery violations and even though I am evaluating the propriety of lesser sanctions. Indeed, dismissal was not part of the order to show cause at this stage of the proceeding.

IPR2021-01229
Patent 7,523,373 B2

explained why PQA's objections lacked merit (*see* Paper 131, 17–26), PQA's position that it could not provide responsive documents, could not log any allegedly privileged responsive documents, or could not provide supported and responsive interrogatory answers—the independently sanctionable conduct here—does not prove out.

PQA also argues that I previously found that "the evidence exchanged as Mandated Discovery [was] sufficient to resolve this Director review . . .," suggesting that its discovery noncompliance was harmless. Paper 138, 8 (quoting Paper 101, 62). However, PQA has not provided the quote in its proper context; the sentence reads in full: "For the reasons explained above, however, the evidence exchanged as Mandated Discovery is sufficient to resolve this Director review *without resorting to in camera review*." Paper 102, 63 (emphasis added) (public version of Paper 101). Thus, my prior statement merely rejected a request that I conduct an in camera review of PQA's allegedly privileged material and further provided instructions for PQA to maintain a privilege log. *See id.* at 17, 25. Further, to the extent that PQA argues that it withheld non-privileged documents, my rejection of in camera review does not excuse the withholding of documents not placed on a privilege log. Nor does my rejection of in camera review set a standard for whether PQA needed to comply with mandated discovery.

Third, PQA argues that sanctioning it while not sanctioning VLSI would be inequitable, arbitrary and capricious, and a violation of due process because, according to PQA, VLSI acted in the same, or even worse, manner as PQA. Paper 138, 12. PQA makes a number of high-level complaints about VLSI's conduct. *Id.* at 12–14. The August 3, 2023 Order to show cause is about PQA's conduct, not VLSI's. PQA cannot excuse its conduct or otherwise avoid appropriate sanctions by trying to shift focus to another

7

IPR2021-01229
Patent 7,523,373 B2

party's conduct. To the extent PQA argues that VLSI also made representations about the nature of Dr. Singh's relationship with PQA (*see* Paper 138, 7), VLSI's representations on this topic appear to be based on PQA's representations.

Fourth, PQA argues that the continuation of this Director Review proceeding is unauthorized and untimely because the proceeding has extended beyond the statutory date for the Board to issue a final written decision and beyond a "short and reasonable time period." Paper 138, 3, 14 (citing, e.g., *Cooley v. United States*, 324 F.3d 1297, 1305 (Fed. Cir. 2003)). I disagree. The Board timely issued its final written decision in this case. *See* Paper 129. In any event, failure to meet the one-year deadline provided by 35 U.S.C. § 316(a)(11) would not deprive the USPTO of authority to act, or jurisdiction over, the IPR. *See Purdue Pharma L.P. v. Collegium Pharm., Inc.*, 2023 WL 8043047, *3–6 (Fed. Cir. Nov. 21, 2023) (discussing analogous provision governing post-grant reviews). Lastly, as I have previously explained, PQA's reliance on *Cooley* is inapt. In that takings case, the three-plus years it took for the Army Corps of Engineers to issue a reconsideration of its original permitting decision resulted in a 98.8% diminution in Cooley's property value. *Cooley*, 324 F.3d at 1304. Here, the time taken to complete Director Review pales in comparison, both in time and consequence to the parties. *See* Paper 131, 19 n.13.

Fifth, PQA appears to argue that whether PQA responded to interrogatory (c) (asking whether PQA could be subject to an infringement claim) is moot because "no products are covered by the invalid '373 patent" and because there is no standing requirement for an IPR. Paper 138, 10 and n.6. As noted above, the underlying paper—PQA's response to the appropriate sanction for PQA's conduct—was not another opportunity for

IPR2021-01229
Patent 7,523,373 B2

PQA to object to discovery or try to explain its non-compliance. Further, PQA cannot cure its failure to respond to the interrogatory by now providing the requested information. And its response would be inadequate even if timely. *See* Paper 131, 35.

Sixth, PQA makes additional arguments relating to interrogatories (d) and (f). However, I only relied on PQA's failure to respond to interrogatories (a), (c), and (e) in finding that PQA deliberately failed to comply with mandated discovery, and did not rely on PQA's failure to respond to interrogatories (d) and (f) in my previous opinion. *See id.* at 42.

Accordingly, I do not agree with PQA's renewed arguments that it should not be sanctioned. I reaffirm my finding that PQA's failure to comply with mandated discovery and its misrepresentations and/or misleading arguments regarding Dr. Singh are sanctionable conduct, for the reasons set forth above and in my original Decision.

## II.    DETERMINATION OF SANCTIONS

Whether sanctions are appropriate is a highly fact-specific question, and the relevant considerations will vary from case to case. Prior sanction contexts have considered:

> (1) whether the party has performed conduct warranting sanctions;
> (2) whether that conduct has caused harm (to, for example, another party, the proceedings, or the USPTO); and
> (3) whether the potential sanctions are proportionate to the harm.

*See, e.g.*, *R.J. Reynolds Vapor Co. v. Fontem Holdings 1 B.V.*, IPR2017-01318, Paper 16 at 5, 8 (PTAB Aug. 6, 2018).

I determine that attorney fees are not appropriate in this case. Although VLSI has had its patent claims found unpatentable based on a

9

IPR2021-01229
Patent 7,523,373 B2

meritorious petition (*see* Paper 129), VLSI has not shown how the conduct at issue in this case, i.e., failure to comply with mandated discovery and misrepresentation of fact and/or misleading argument regarding the exclusive nature of its expert engagement, resulted in harm to VLSI. VLSI argues that if PQA had "made clear it was not interested in protecting the patent system's integrity . . ., this IPR would have been dead on arrival." Paper 141, 2. This ignores my determination that the Petition presented compelling merits at the time of institution and that the IPR should continue. *See* Paper 102, 5–6, 62–63. VLSI also argues that if PQA acknowledged that its exclusive engagement with Dr. Singh was waivable, that would have led to denial of PQA's Petition. Paper 141, 2–3. However, it is speculation to assume that the availability of PQA's expert to other parties in other proceedings would have led the Board to deny PQA's Petition. It is likely that, at most, it would have led the Board *not* to deny OpenSky's substantially identical petition on the '373 patent, which was denied based on PQA's representation that OpenSky would have been unable to engage Dr. Singh. *See* Paper 131, 44; Ex. 2016; IPR2021-01056, Paper 18, 5–9, 6; IPR2021-01056, Ex. 2016.[8]

However, a party's failure to comply with mandated discovery and misrepresentation of fact/misleading arguments is a serious matter that cannot occur without consequence. *See, e.g.*, *Hendler v. United States*, 952 F.2d 1364, 1382 (Fed. Cir. 1991) (observing that noncompliance with an

---

[8] PQA makes additional arguments that VLSI has suffered no compensable injury stemming from PQA's alleged misconduct. *E.g.*, Paper 138, 6. Because I do not assess compensatory expenses, I do not reach these arguments. I also do not reach VLSI's additional arguments for compensatory expenses.

IPR2021-01229
Patent 7,523,373 B2

order "cannot be condoned"). PQA's conduct undermined the ability of the Office faithfully to administer the AIA system. Thus, I determine that the appropriate sanction for PQA's conduct is a strong admonishment. Contrary to VLSI's suggestion, I anticipate that publicly and strongly admonishing PQA will deter future conduct by PQA and other parties, as well as protect the integrity of AIA proceedings and the patent system. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (discovery violation sanctions appropriate "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent").

Further, I note that the sanction in this case is appropriate in view of differences between PQA's conduct and that of other parties in similar sanctions contexts. *See, e.g.*, *EEOC v. Troy State Univ.*, 693 F.2d 1353, 1357–58 (11th Cir. 1982) (noting differences between party conduct in separate cases in evaluating propriety of sanctions under Federal Rule of Civil Procedure 37); *Hendler*, 952 F.2d at 1382–83 (same); *Mynette Techs., Inc. v. United States*, 163 Fed. Cl. 733, 768 (Dec. 20, 2022) (comparing conduct in determining appropriate sanction). For example, I find that PQA's conduct, though sanctionable, was less egregious than that of petitioner OpenSky in IPR2021-01064, where OpenSky offered to undermine and/or not vigorously pursue its IPR in exchange for a monetary payment, in addition to discovery violations. *See* IPR2021-01064, Paper 102, 3; *id.*, Paper 127, 2.[9] VLSI relies heavily on PQA's motives for filing the underlying petition to justify attorney fees as a sanction (*see* Paper 140,

---

[9] This comparison should not be read to define OpenSky's conduct as the threshold for monetary sanctions.

IPR2021-01229
Patent 7,523,373 B2

2, 8; Paper 141, 3–4), but my sanctions order was not based on such a
finding. *See* Paper 131, 37 n.25.

VLSI argues that the award of costs and fees in *Atlanta Gas Light Co.
v. Bennett Regulator Guards, Inc.*, IPR2015-00826, Paper 39 (Dec. 6, 2016),
for "less egregious offenses" supports the same discretionary sanction here.
Paper 140, 7. However, there are key differences between the two
situations. In particular, the cited order in *Atlanta Gas* found petitioner
Atlanta Gas's failure to accurately identify all real parties in interest and
privies to be sanctionable conduct. *See* IPR2015-00826, Paper 39, 5–6. The
Board further found that patent owner Bennett Regulator Guards suffered
harm from that conduct and that the sanction of costs and fees was
"proportionate to [that] harm." *Id.* at 8; *see id.* at 6–9. As discussed above, I
find that VLSI did not suffer notable harm based upon PQA's sanctionable
conduct here, making the award of attorney fees inappropriate.[10] I,
therefore, strongly admonish PQA that its conduct was unbefitting a party
before the Office. *See, e.g.*, *Securities & Exchange Comm'n v. Smith*, 798 F.
Supp. 2d 412, 442 (N.D.N.Y. 2011) (applying admonishment as sanction
where connection between conduct and harm not demonstrated).

It bears emphasizing that PQA's conduct regarding its arrangement
with Dr. Singh was unacceptable. Parties have a duty of candor and good
faith before the Office. 37 C.F.R. §§ 42.11. PQA had a written agreement
with Dr. Singh but misrepresented the contents of that agreement in its
filings, and then took inconsistent approaches to characterizing the contents

---

[10] Further, Atlanta Gas's sanctionable conduct ultimately delayed proper
application of the one-year time bar set forth in 35 U.S.C. § 315(b) and
correct resolution of the proceeding, further distinguishing the offending
conduct. *See* IPR2015-00826, Paper 52.

IPR2021-01229
Patent 7,523,373 B2

of the agreement as it suited PQA's arguments. *See* Paper 131, 46–49. Parties must fully and accurately represent written instruments and written documents so as to give the Office a complete understanding of the facts and so as not to mislead the Office. Here, PQA did not even file a copy of Dr. Singh's engagement until after it had initially characterized it in an incomplete way, and then continued to change its arguments about whether it had an exclusive agreement. Paper 131, 47–48.

It is essential to the administration of justice that courts and agencies can rely on the representations made to them by the parties and their counsel. Factual contentions must have evidentiary support. *Cf.* Fed.R.Civ.P. 11. And counsel who draft and sign pleadings are expected to verify their contentions and attest to the compliance with the certification requirements. *See* 37 C.F.R. § 42.11(b)–(c).[11] It is necessary for the USPTO to sanction such violations to protect the integrity of its proceedings and the interests of other parties. It bears repeating that the Board relied on PQA's misrepresentations and misleading arguments to deny OpenSky's alternative IPR petition. *See* Paper 131, 45. PQA's misconduct here was thus clearly improper because it had a direct, adverse impact on the USPTO's ability to render timely and accurate IPR decisions. In addition to its misrepresentation, PQA also failed to comply with my mandated discovery. I have already detailed how PQA 1) refused to provide responsive internal documents or a privilege log of withheld responsive documents, and 2) failed to provide good-faith interrogatory responses or

---

[11] This opinion addresses only sanctions imposed against a party. It does not address, nor does it preclude, potential sanctions or discipline against those who practiced before the USPTO on behalf of the party. *See* 37 C.F.R. 11.18(c)(2).

IPR2021-01229
Patent 7,523,373 B2

adequate evidence. Paper 131, 26–40. The proper functioning of any tribunal and legal inquiry demands legitimate participation from the parties. *See, e.g.*, *Taylor v. Illinois*, 484 U.S. 400, 412–13 ("Discovery, like cross-examination, minimizes the risk that a judgment will be predicated on incomplete, misleading, or even deliberately fabricated testimony."). PQA simply did not do that here. For example, PQA did not answer the interrogatory as to the identity of its members. Paper 131, 30. This is a basic question that has a simple answer; if PQA thought that information was privileged or otherwise confidential, there were mechanisms for it to comply with my discovery order while protecting those interests. But PQA's decision to simply not respond is not reasonable nor appropriate. In view of the above, PQA is strongly admonished for its failure to comply adequately with mandated discovery.

PQA is further cautioned that future misconduct will be met with additional and likely more significant sanctions. Parties that practice before the Office are expected to comply with mandated discovery and to make accurate representations, consistent with all appropriate duties of candor and good faith. *See* 37 C.F.R. §§ 42.11–42.12.


For the foregoing reasons, it is hereby:

ORDERED that PQA is strongly admonished and cautioned that any future misconduct in this regard will be met with additional sanctions.

14

IPR2021-01229
Patent 7,523,373 B2


PETITIONER:

Benjamin Fernandez
David Cavanaugh
Yvonne Lee
Steven Horn
WILMER CUTLER PICKERING HALE AND DORR LLP
ben.fernandez@wilmerhale.com
david.cavanaugh@wilmerhale.com
yvonne.lee@wilmerhale.com
steven.horn@wilmerhale.com

Bruce Slayden
Tecuan Flores
Truman Fenton
SLAYDEN GRUBERT BEARD PLLC
bslayden@sgbfirm.com
tflores@sgbfirm.com
tfenton@sgbfirm.com



PATENT OWNER:

Babak Redjaian
IRELL & MANELLA LLP
bredjaian@irell.com

Kenneth J. Weatherwax
Bridget Smith
Flavio Rose
Parham Hendifar
Patrick Maloney
Jason Linger
LOWENSTEIN & WEATHERWAX LLP

IPR2021-01229
Patent 7,523,373 B2

weatherwax@lowensteinweatherwax.com
smith@lowensteinweatherwax.com
rose@lowensteinweatherwax.com
hendifar@lowensteinweatherwax.com
maloney@lowensteinweatherwax.com
linger@lowensteinweatherwax.com