# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

VLSI TECHNOLOGY LLC,

*Appellant*,

v.

PATENT QUALITY ASSURANCE LLC,

*Cross-Appellant*,

INTEL CORPORATION,

*Appellee*,

KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,

*Intervenor*.

Nos. 23-2298, 23-2354

## VLSI TECHNOLOGY LLC'S NOTICE REGARDING THE COMPLETION OF PROCEEDINGS ON REMAND

The consolidated appeals in this case were filed from a final written decision in an inter partes review. When the appeals were filed, however, sanctions issues arising from that IPR were still pending before the PTO's Director. Accordingly, on December 7, 2023, this Court stayed the appeals and ordered a limited remand to the PTO, so that the Director could resolve the outstanding sanctions issues. ECF #28 at 3.[1] The Court's December 7 order directed the parties to inform the Court, within

---

[1] "Paper" citations refer to filings in the underlying IPR proceeding (IPR2021-01229), while "ECF #" citations refer to filings in Fed. Cir. No. 23-2298.

14 days after completion of Director review, "as to how they believe these appeals should proceed" in light of the Director's final decision. *Id.* Pursuant to that order, appellant/cross-appellee VLSI Technology LLC respectfully submits this notice stating that the Director issued a final decision resolving all outstanding sanctions issues in the underlying IPR on December 13, 2023. Paper 143. VLSI believes these appeals should proceed as follows:

(1)     Parties intending to challenge any sanctions rulings in the underlying IPR should be allowed to file a notice of appeal from the Director's final sanctions order. As VLSI's remand motion explained, at the time of the initial appeals, *no* sanctions issues in the IPR could be appealed to this Court: There was no final decision on sanctions to review because the Director had not yet determined what sanction to impose. ECF #23 at 15-16. There was no final, appealable decision regarding sanctions until the Director issued her December 13 decision resolving all outstanding sanctions issues. Accordingly, a notice of appeal from that decision is needed to afford this Court jurisdiction over the sanctions issues arising from the IPR.

(2)     Once any new notices of appeal are docketed, those appeals should be consolidated with the existing appeals in this case (Nos. 23-2298 and 23-2354). As the remand motion explained, that would allow issues relating to sanctions and

issues relating to the final written decision to be briefed and considered together, promoting judicial economy.  ECF #23 at 17-20.

(3)    The PTO should serve an updated certified list pursuant to Federal Circuit Rule 17(b)(1) in the ordinary course.  The Court would then set its typical briefing schedule, under which VLSI's opening brief (covering both sanctions and the final written decision) would be due 60 days after the PTO's service of the updated certified record.  That approach is consistent with this Court's past practice involving limited remands to the PTO.

The existing appeals would accordingly be reactivated.  As outlined above, however, the briefing schedule should remain stayed pending the filing of notices of appeal from the Director's final sanctions decision and service of an updated certified list.  That will ensure that sanctions and merits issues can be briefed and considered together—the reason a stay was warranted in the first place.

VLSI has consulted with counsel for the other parties.  Intel and the Director have stated that they do not believe that notices of appeal from the final sanctions decision are necessary.  Patent Quality Assurance LLC ("PQA") has stated that it believes the "parties should report that the stay should be lifted and ask the Federal Circuit to proceed with the appeals."  VLSI understands that the other parties will separately notify this Court regarding their views.

# BACKGROUND

This case's complex procedural history is described in VLSI's remand motion. *See* ECF #23 at 5-13. For the Court's convenience, pertinent points are summarized below.

## I.     Sanctions Proceedings in the PTO

The sanctions proceedings in the underlying IPR began in July 2022, when the Director ordered discovery into whether petitioner PQA had committed an abuse of process. Paper 35 at 7-12. The discovery was relevant to, among other things, PQA's purpose in pursuing the IPR; whether PQA made misrepresentations to the PTO, including that there were no other real parties in interest; and whether PQA was a strawman for Intel or another entity. *Id.* PQA refused to provide the ordered discovery.

As a result, in December 2022, the Director found that PQA had engaged in extensive discovery misconduct by failing to produce documents or respond to interrogatories in good faith, in violation of the Director's express orders. Paper 102 at 2-3, 19-38. PQA's stonewalling, the Director found, made it impossible for the Director or VLSI to "verify" PQA's true motives for filing the IPR, "fully examine PQA's assertion that it ha[d] not committed an abuse of the IPR process," or "evaluate" PQA's assertion that there were no other real parties in interest. *Id.* at 28, 33-34, 37; *see* Paper 131 at 30, 38. Additionally, the Director found that PQA

"advanc[ed] a misleading argument," "made material misrepresentations" to the PTAB, and filed its petition "for the improper purpose of extracting money from VLSI." Paper 102 at 3, 49, 54.

The Director explained that "[e]ach aspect of PQA's conduct . . . , taken alone, constitute[d] sanctionable conduct." Paper 102 at 4. "Taken together," the Director concluded, "[PQA's] behavior warrants sanctions." *Id.* The Director then considered what sanctions to impose. *Id.* at 55-59. VLSI sought "the strictest sanction"—"termination" of the IPR. Paper 68 at 22-23; *see* Paper 102 at 56. But the Director declined to impose that sanction. Paper 102 at 58-63. Instead, she dismissed PQA from the IPR, retaining jurisdiction over sanctions proceedings, and ordered PQA to show cause as to why it should not pay compensatory expenses. *Id.* at 58, 63-64. Intel, which was time-barred from petitioning for IPR itself but had been joined to PQA's IPR, was left as the "sole Petitioner." *Id.* at 58.

PQA sought reconsideration of the Director's sanctions findings and show-cause order. Paper 105. It also filed a petition for a writ of mandamus to this Court contending that the Director lacked authority to sanction it. *In re Patent Quality Assurance LLC*, No. 23-118, Dkt. 2 (Fed. Cir. Jan. 24, 2023). The Director later vacated her order dismissing PQA and restored it as a party, Paper 108 at 4, and PQA dismissed its mandamus petition, No. 23-118, Dkt. 28 (Fed. Cir. Mar. 6, 2023).

In August 2023, on reconsideration of her December 2022 sanctions order, the Director reaffirmed that PQA engaged in sanctionable conduct.  Paper 131 at 2.  She again found that PQA engaged in discovery misconduct and had made misrepresentations to the PTAB.  *Id.* at 26-50.  Having found PQA's conduct sanctionable, the Director ordered briefing on whether PQA should be "reprimanded or admonished" and/or "ordered to pay compensatory expenses" as a sanction.  *Id.* at 51-52.[2]

## II.  VLSI and PQA Appeal from the Board's Final Written Decision While Sanctions Remained Unresolved, Resulting in a Stay and a Limited Remand

Meanwhile, in June 2023, the PTAB issued its final written decision in the underlying IPR, finding all challenged claims unpatentable.  Paper 129.  VLSI timely appealed that decision.  Paper 132; ECF #1-2.  PQA filed a putative notice of cross-appeal.  Paper 135; No. 23-2354, Dkt. 1-2.  Although styled as a notice of appeal from the final written decision, PQA sought review *not* of that decision, but of the sanctions orders that had been issued up to that point.  Paper 135.  This Court consolidated VLSI's and PQA's appeals.  ECF #16.

---

[2] In the August 2023 decision reconsidering her December 2022 order, the Director did not reach PQA's reason for filing its petition.  Paper 131 at 37 n.25, 43 n.29.  She did not, however, question that PQA's reasons had been improper.

**A.    VLSI Moves for a Stay Pending Resolution of Still-Outstanding Sanctions Issues and a Limited Remand To Ensure the Director Has Jurisdiction To Resolve Them**

All agreed that, because the Director had not yet determined the sanction to be imposed, the sanctions proceedings were not complete.    Accordingly, VLSI moved to stay the appeals and for a limited remand to the PTO so that the Director could resolve outstanding sanctions issues.    ECF #23.    Intel, PQA, and the Director did not oppose the request for a stay and remand.    *Id.* at 2-3.

VLSI explained that, among other things, it planned to seek review of the Director's refusal to terminate the IPR as a sanction for PQA's misconduct.    ECF #23 at 17-19.    But it explained that *no* sanctions decisions—including both the refusal to terminate the IPR and the rulings PQA sought to challenge—were properly before this Court because additional sanctions issues remained outstanding before the PTO.    ECF #23 at 15-16.    The Court lacks jurisdiction over any sanctions issues so long as sanctions remain "'unquantified, and thus non-final.'"    *Id.* (quoting *Bennett Regulator Guards, Inc. v. Atlanta Gas Light Co.*, 905 F.3d 1311, 1315 (Fed. Cir. 2018), *vacated on other grounds*, 140 S. Ct. 2711 (2020), *on remand*, 825 F. App'x 773 (Fed. Cir. 2020) (finding no jurisdiction over appeal from PTO's non-final sanctions decision even though final written decision had issued)).    In this case, sanctions were not merely unquantified; the Director had not even determined whether to order compensatory expenses as a sanction.    Paper 131 at 51-52; Papers

138-141.   Accordingly, there was no final, appealable sanctions decision that could bring the sanctions issues properly before this Court.

Judicial economy thus favored staying the appeals from the final written decision pending the Director's decision on sanctions issues.  That would allow this Court to address all issues arising from the IPR together, including both the potentially case-dispositive sanctions issues and the challenges to the final written decision.  ECF #23 at 17-19.  While the limited remand was potentially unnecessary (because this Court never had jurisdiction over the non-final sanctions issues), a limited remand would resolve any question concerning this Court's and the PTO's jurisdiction over remaining sanctions issues.  *Bennett*, 905 F.3d at 1315; *Dobyns v. United States*, 915 F.3d 733, 738 (Fed. Cir. 2019).  This Court had taken a similar approach in *Apple Inc. v. Voip-Pal.com, Inc.*, Nos. 18-1456 *et al.* (Fed. Cir.), where this Court ordered a limited remand "[t]o the extent necessary" to allow sanctions proceedings to conclude in the PTO.  *Id.*, Dkt. 21 (Feb. 21, 2018); *see VLSI Tech. Inc. v. OpenSky Indus., LLC*, Nos. 23-2158 *et al.*, Dkt. 15 at 18-20 (Fed. Cir.); ECF #23 at 20-22.

## B.    This Court Issues a Stay and Orders a Limited Remand, and the Director Completes Sanctions Proceedings

This Court "agree[d] that limited remand is appropriate under the circumstances here, which may facilitate this [C]ourt's review."  ECF #28 at 2.  On December 7, 2023, the Court stayed the appeals, and remanded the case insofar as it

was necessary to allow the Director to complete the sanctions proceedings. *Id.* at 3. The Court directed the parties to inform it within 14 days from completion of the Director's review "as to how they believe these appeals should proceed." *Id.*

The Director issued a final decision resolving all outstanding sanctions issues in the underlying IPR on December 13, 2023. Paper 143. The Director refused to order PQA to compensate VLSI for attorney's fees VLSI incurred as a result of PQA's misconduct, and instead "strongly admonished" PQA. *Id.* at 9-14. The Director found that VLSI was not harmed by the limited components of PQA's broader misconduct—specifically, PQA's discovery violations and misrepresentation that it had exclusively engaged an expert—upon which the sanctions ruling was based. *Id.* at 9-10. But the Director did not reach, for example, whether VLSI suffered harm from PQA's abuse of the IPR process either as a means of extortion or to act as a strawman for Intel. The Director also stated, without explanation, that she would not consider all of VLSI's arguments in favor of compensatory expenses. *Id.* at 10 n.8.

On December 22, 2023, PQA filed an amended notice of appeal and amended docketing statement. ECF #31; ECF #32.

## DISCUSSION

The path forward for these appeals is straightforward: First, any party that seeks this Court's review of any of the Director's sanctions rulings should be

allowed to file a notice of appeal from the Director's final sanctions decision. Second, any new appeals should be consolidated with the existing appeals, and the PTO should file an updated certified list. Third, briefing in the consolidated appeals should proceed in accordance with this Court's rules, with VLSI's opening brief due 60 days after the PTO files an updated certified list. That approach ensures this Court's jurisdiction over the sanctions issues in this case; promotes judicial economy by allowing sanctions and merits issues to be briefed and considered together; and comports with this Court's practice in similar cases.

1.    A notice of appeal is necessary to ensure this Court's jurisdiction over the Director's sanctions rulings. When the parties appealed from the Board's final written decision, Paper 132; Paper 135, the Director had not determined what sanction to impose, *see* pp. 7-8, *supra*. Consequently, although VLSI's notice of appeal from the final written decision gave this Court jurisdiction to review *that* decision—the final written decision—this Court lacked jurisdiction over any *sanctions* issues because the Director's sanctions rulings were not final and appealable. ECF #23 at 15-16; *see Bennett*, 905 F.3d at 1315-16; *Bennett*, 825 F. App'x at 782-83; *Orenshteyn v. Citrix Sys., Inc.*, 691 F.3d 1356, 1357-58 (Fed. Cir. 2012) (this Court lacks jurisdiction over district-court orders granting sanctions "until the district court has decided the amount of sanctions," even where final decision on the merits is properly before this Court on appeal).

The Director has now issued a final, appealable sanctions order. Where, as here, a party seeks to appeal from such a further order, in addition to a final order on the merits, the challenges to the two orders "'must be covered by separate notices of appeal—each filed after the subject has independently become "final."'" *Orenshteyn*, 691 F.3d at 1358 (quoting *McCarter v. Ret. Plan for the Dist. Managers of the Am. Family Ins. Grp.*, 540 F.3d 649, 652 (7th Cir. 2008)); *see Leahy v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 912 F.2d 917, 923 (7th Cir. 1990) ("The decision on the merits and on the award of attorney's fees under Rule 11 were separate judgments, from which separate appeals should have been filed."). Absent another notice of appeal following a final sanctions order, courts have held that they "have no jurisdiction to review" sanctions. *Ellis v. CAC Fin. Corp.*, 6 F. App'x 765, 768-69 (10th Cir. 2001); *see EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1250 (10th Cir. 1999). Accordingly, to bring sanctions issues properly before this Court, the proper course is to allow any party that seeks review of any sanctions rulings in this case to "appeal from [the] *final* sanctions determination in the ordinary course." *Orenshteyn*, 691 F.3d at 1364; *see Orenshteyn v. Citrix Sys., Inc.*, No. 15-1056, Dkt. 1-2 (Fed. Cir. Oct. 15, 2014) (subsequent notice of appeal in *Orenshteyn* litigation from final sanctions order).

Although PQA previously purported to appeal sanctions issues by appealing the final written decision on the merits, Paper 135, that appeal was premature and

ineffective. *See Bennett*, 905 F.3d at 1315-16; *Bennett*, 825 F. App'x at 782-83; *Orenshteyn*, 691 F.3d at 1357-58; pp. 6-8, *supra*. Appellate courts "lack[] jurisdiction over . . . premature appeals," and the fact that the sanctions decisions subsequently became final does not "cure th[e] premature appeal and make it timely." *Lazorko v. Pennsylvania Hosp.*, 237 F.3d 242, 248 (3d Cir. 2000); *see Feldman v. Olin Corp.*, 692 F.3d 748, 758 (7th Cir. 2012) (court of appeals lacked jurisdiction to address sanctions because, although plaintiff appealed from "non-final" order that imposed sanctions but "reserved the calculation of fees," plaintiff failed to file a new notice of appeal after fees were resolved).

Nor does the limited exception in Federal Rule of Appellate Procedure 4(a)(2) apply here (even assuming that rule otherwise applies to appeals from agencies). Under that rule, a premature notice of appeal is valid "only when a district court announces a decision that *would be* appealable if immediately followed by the entry of judgment." *FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.*, 498 U.S. 269, 276 (1991) (emphasis in original). In other words, a premature notice of appeal from an otherwise-final decision can be given effect once a *judgment* effectuating that decision is entered. That rule does not apply to non-final decisions, such as the non-final sanctions orders the Director had issued when PQA filed its notice of appeal. *See Lazorko*, 237 F.3d at 248; *Feldman*, 692 F.3d at 758. Thus, if PQA wishes to

appeal any sanctions issue, it (like VLSI) must file a new notice of appeal.[3]
Apparently recognizing that a new notice of appeal is required, PQA filed one in this
Court on December 22, 2023.  ECF #31.

The Director and Intel have suggested that a new notice of appeal is
unnecessary because, when granting the limited remand, this "[C]ourt retain[ed]
jurisdiction over [the existing] appeals."  ECF #28 at 3.  But that simply meant the
Court retained the jurisdiction that it possessed by virtue of the original notices of
appeal—namely, jurisdiction over the final written decision.  As discussed above,
those notices of appeal did not and could not give the Court jurisdiction over
*sanctions* issues in the case, because there was no final and appealable sanctions
decision at that time.  This Court cannot retain jurisdiction over sanctions issues if it
lacked that jurisdiction in the first place, and lower tribunals "typically retain
jurisdiction to rule on collateral issues, such as sanctions or attorney's fees, even
after they lose jurisdiction over the merits decision."  *Dobyns*, 915 F.3d at 738.
Consequently, the Court's limited remand may have been unnecessary, but it was

---

[3] For similar reasons, VLSI's notice of appeal from the final written decision would
not be effective as to sanctions issues; that notice expressly stated that sanctions
rulings were "not yet appealable."  Paper 132 at 2.  Out of an abundance of caution,
VLSI's notice of appeal stated that it covered sanctions issues "[i]nsofar as any
sanctions rulings nonetheless may be found to have merged into the final written
decision" or are otherwise found to be appealable.  *Id.*  VLSI renews that
preservation of its appellate rights—but, for the reasons above, it believes the law
requires a new notice of appeal to bring sanctions issues properly before this Court.

consistent with this Court's prior practice in similar situations to avoid any question of its or the PTO's jurisdiction.[4]  *See* pp. 7-8, *supra*.  Now that the Director has issued a final and appealable sanctions decision, a notice of appeal from that decision is needed to give this Court jurisdiction over sanctions issues.

2.    Once any new notices of appeal from the final sanctions decision are docketed, the new appeals should be consolidated with the existing appeals.  That will achieve precisely the judicial economy benefit that warranted the stay and limited remand in the first place: It will allow the parties to brief, and this Court to review, all issues arising from the same underlying IPR—both the Director's sanctions decisions and the final written decision—together.

As VLSI's remand motion explained, VLSI intends to argue that the Director erred in refusing to terminate the IPR as a sanction for PQA's misconduct.  *See* ECF #23 at 17-20.  If the Court agrees that decision was arbitrary and capricious, inconsistent with reasoned decisionmaking, or otherwise legally infirm, it may be unnecessary to review issues regarding the final written decision.  VLSI's sanctions appeal, moreover, may present issues overlapping with those in the appeal from the

---

[4] In general, lower courts lack authority to issue rulings that would deprive appellate courts of jurisdiction over, or fundamentally alter the issues in, cases already pending on appeal. *Newton v. Consol. Gas Co. of N.Y.*, 258 U.S. 165, 177 (1922) (district court, after appeal, "may not finally adjudicate substantial rights directly involved in the appeal").  The remand thus may have ensured that the PTO retained authority to moot the pending merits appeal by, for example, reconsidering prior sanctions rulings and terminating the IPR as a sanction for PQA's misconduct.

final written decision.  Allowing the appeals from the final written decision and from the final sanctions decision to be briefed and considered together thus, as this Court recognized, "may facilitate this [C]ourt's review."  ECF #28 at 2.

3.    The PTO should file an updated certified list pursuant to Federal Circuit Rule 17(b)(1) within 40 days of docketing of any new notices of appeal (or within 40 days of this Court's order).  Consistent with this Court's practice, the Court would enter a briefing schedule under which VLSI's opening brief would be due 60 days after service of the certified list.

That is the approach this Court has taken in similar circumstances.  For example, in *Apple v. Voip-Pal.com*, No. 18-1456 (Fed. Cir.) (discussed in ECF #23 at 14, 17-18 & n.6), this Court granted a stay of appeals from a final written decision and ordered a limited remand to the PTO for resolution of outstanding sanctions issues (including a request for termination of the IPR with judgment for the petitioner).  No. 18-1456, Dkt. 21 (granting stay); *id.*, Dkt. 6 (motion for stay).  After sanctions were resolved and Apple filed a new notice of appeal (in the form of an amended notice), this Court lifted the stay and ordered that "[a]n updated certified list is due no later than 40 days from the date of filing of this order."  *Id.*, Dkt. 26 at 2; *see id.*, Dkt. 25.  Once the updated certified list was served, the Court set a briefing schedule consistent with Federal Circuit Rule 31, with the opening brief due 60 days

after service of the certified list.  *See id.*, Dkt. 27 (electronic docket text); *id.*, Dkt.

28.  This Court has followed that path repeatedly in similar contexts.[5]

Insofar as other parties may suggest that the stay of briefing in the current

appeals should be lifted immediately, they offer no sound basis for that short-

circuited approach.  The appeals from the final written decision were stayed so

---

[5] *See, e.g., Pfizer Inc. v. Sanofi Pasteur Inc.*, Nos. 19-1871 *et al.*, Dkts. 82, 85-88
(Fed. Cir. 2011-2022) (after final decision on limited remand to the PTO, (1) the
appellant was to notify Court "whether it intends to file any new or amended notices
of appeal"; (2) the appellant indicated it would file new or amended notices of appeal
within 63 days pursuant to 37 C.F.R. §90.3(b)(1); and (3) Court ordered that the
certified list be filed "no later than 40 days from the date of filing of the last-filed
amended notice(s) of appeal," and that the appellant's brief would be due "no later
than 60 days from the date of filing of the updated certified lists"); *High 5 Games,
LLC v. Vidal*, No. 20-1024, Dkts. 30-34 (Fed. Cir. 2021-2022) (similar, except Court
set 60-day deadline for updated certified list after filing of notice of appeal); *In re
Boloro Glob. Ltd.*, Nos. 19-2349 *et al.*, Dkts. 41-46 (Fed. Cir. 2021-2022) (similar);
*cf. Kyocera Senco Indus. Tools Inc. v. ITC*, Nos. 20-1046 *et al.*, Dkt. 23, Dkt. 25 at
1-2, Dkt. 26 (Fed. Cir. 2020) (Court stayed appeal to allow proceedings in the ITC
to conclude with respect to a separate patent; after ITC decision issued, a notice of
appeal was filed shortly before the expiration the ordinary 120-day deadline; the
Court then consolidated the appeals, ordered a certified list due 40 days after the new
notice of appeal was docketed, and ordered the opening brief to be filed 60 days after
the filing of the certified list); *In re Unified Messaging Sols. LLC & Advanced
Messaging Techs., Inc. Patent Litig.*, Nos. 14-1611 *et al.*, Dkts. 229, 273, 289-291
(Fed. Cir. 2014-2016) (Court stayed merits appeal to permit district court to resolve
exceptional-case motion under 35 U.S.C. §285; district court then ruled that case
was exceptional under §285 but did not determine amount of attorney's fees;
appellants filed premature notice of appeal from the non-final §285 order, and stay
was maintained; later, the district court determined the amount of fees, making the
§285 issues ripe for appeal; appellants filed a notice of appeal from that order; Court
then consolidated §285 appeal with merits appeal and ordered opening brief to be
filed 60 days after its order (amounting to 69 days after docketing of the appeal from
the §285 order, No. 16-2150)).

sanctions issues could be properly appealed and considered alongside merits issues. ECF #23 at 17-20. If the final written decision appeals simply went forward now without the sanctions appeals, the stay this Court ordered would have served no purpose. The Director's December 13 sanctions decision, moreover, included a new ruling adverse to VLSI: The Director ruled (although she refused, without explanation, to consider all of VLSI's arguments) that VLSI purportedly was not prejudiced by the limited components of PQA's misconduct upon which the sanctions ruling was based, and thus denied VLSI's request to recover attorney's fees it expended because of that misconduct. Paper 143 at 9-10 & n.8. The Director also found that "admonishment" was a sufficient deterrent to similar conduct, *id.* at 10-11, another finding relevant to the propriety of the Director's refusal to issue terminating sanctions. *See* 37 C.F.R. §42.11(d)(4) (sanction must be sufficient to "deter repetition of the conduct"). That the Director's December 13 decision added to the issues VLSI may challenge on appeal only reinforces the necessity of new notices of appeal and affording the parties the opportunity to brief those issues on appeal in the ordinary course.

## CONCLUSION

These appeals should proceed as follows:

(1)     Parties intending to challenge any sanctions rulings in the underlying IPR should be allowed to file a notice of appeal from the Director's final sanctions order.

(2)     Once any new notices of appeal are docketed, those appeals should be consolidated with the existing appeals in this case (Nos. 23-2298 and 23-2354), allowing issues relating to sanctions and issues relating to the final written decision to be briefed and considered together.

(3)     The PTO should serve an updated certified list pursuant to Federal Circuit Rule 17(b)(1) in the ordinary course.  The Court would then set its typical briefing schedule, under which VLSI's opening brief (covering both sanctions and the final written decision) would be due 60 days after the PTO's service of the updated certified record.

December 27, 2023

Respectfully submitted,

/s/ Jeffrey A. Lamken

Jeffrey A. Lamken
   *Counsel of Record*
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
jlamken@mololamken.com

*Counsel for VLSI Technology LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 2023-2298, 2023-2354

**Short Case Caption** VLSI Technology LLC v. Patent Quality Assurance LLC

**Filing Party/Entity** VLSI Technology LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.


Date: 12/27/2023

Signature:  /s/ Jeffrey A. Lamken

Name:  Jeffrey A. Lamken

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. <br><br> ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. <br><br> ☐ None/Not Applicable |
| VLSI Technology LLC | | CF VLSI Holding LLC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

---

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| Bridget Smith<br>Lowenstein & Weatherwax LLP *No longer with firm | Flavio Rose<br>Lowenstein & Weatherwax LLP *No longer with firm | Edward Hsieh<br>Lowenstein & Weatherwax LLP *No longer with firm |
| Parham Hendifar<br>Lowenstein & Weatherwax LLP | Patrick Maloney<br>Lowenstein & Weatherwax LLP *No longer with firm | Jason C. Linger<br>Lowenstein & Weatherwax LLP *No longer with firm |
| | | |

---

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)     ☐ No     ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

---

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-2298, 2023-2354

**Short Case Caption:** VLSI Technology LLC v. Patent Quality Assurance LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 4,348 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 12/27/2023

Signature: /s/ Jeffrey A. Lamken

Name: Jeffrey A. Lamken

Save for Filing